UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON
CASE NO.: 5:17-CV-00405-JMH

ALI SAWAF, Individually,                                                                    PLAINTIFF
and as the Administrator of
the Estate of MARK S. SAWAF, Deceased

        V.                                              Plaintiff's Combined RESPONSE to Defendants'
                                                        Motions to Dismiss Pursuant to Fed. R. Civ. P 12

Lexington Fayette Urban County                                                          DEFENDANTS
Government, Matt Greathouse,
Individually and Clayton Roberts,
Individually, Brad Dobrzynski,
Individually, and Unknown
Defendants

***** ***** *****

        Comes now the Plaintiff in his combined Response to separate Motions, and amended

Motions, filed by the Lexington Fayette Urban County Government (hereinafter "LFUCG"),

Matt Greathouse, individually, Clayton Roberts, individually, and Brad Dobrzynski,

individually, through counsels asking the Court to dismiss Plaintiff's Complaint pursuant to the

Federal Rule of Civil Procedure: 12(b)(6).

        As set forth more fully herein below, the facts contained and alleged in Plaintiff's

Complaint were taken directly from the Kentucky State Police (KSP) investigation into the

officer involved shooting death of Mark S. Sawaf and/or directly from recorded audio statements

and admissions given to KSP investigators by the Defendants themselves. Although those facts

alleged in Plaintiff's Complaint describe outrageous, unconscionable, and heinously disturbing

conduct on the part of Defendants in regards to their treatment and deprivation of constitutional

rights of Mark S. Sawaf, Defendants have not DENIED the veracity of any of the alleged facts.

Instead, Defendants' Motions and Amended Motions come as Responsive Pleadings in lieu of any other Answer to Plaintiff's Complaint.

Defendants' Motions are based on an assertion that it is somehow "beyond doubt that the Plaintiff cannot prove the claims he has asserted against these Defendants and/or that the allegations in his Complaint are insufficient as a matter of law to support those claims." Defendants' Motions are further based on an assertion that Plaintiff's "claims fail and or should otherwise be dismissed based on the exclusive remedy and requirement to exhaust administrative remedies under the Federal Tort Claims Act (FTCA) and because any claims under 42 U.S.C. § 1983 are inapplicable." These assertions are unsubstantiated, unable to be substantiated without Discovery dependent upon a proper Answer from Defendants, and contradicted by the record.

This Court is respectfully requested to DENY Defendants' Motions as their Responsive Pleadings taken as a whole are inadequate to Answer Plaintiff's Complaint. Plaintiff has not been allowed sufficient opportunity for Discovery nor been yet expected to prove all claims asserted against the above-styled Defendants. Plaintiff has presented allegations which are *prima facie* sufficient as a matter of law to support claims asserted against the above-styled Defendants. The suggested FTCA administrative remedies are either not exclusive or are not required in this case, and claims under 42 U.S.C. § 1983 are applicable. Support for Plaintiff's request follows.

**I.** Defendant, Captain Dobrzynski's, Argument I is based on a claim that Plaintiff is required to, and failed to, exhaust administrative remedies pursuant to the FTCA and that these are the exclusive remedies available to Plaintiff. Defendant claims "Captain Dobrzynski qualifies as a federal employee for FTCA purposes despite his employment with LFUCG." This argument and claim quotes 28 U.S.C. § 2671, 5 U.S.C. § 3374(a), and 5 U.S.C. § 3374(c).

Defendant further argues that "remedy against the United States [is] exclusive" were Plaintiff to seek redress for "personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the [presumably Federal] Government," which Plaintiff is not seeking, thus rendering this further argument moot.

Defendants raise 28 U.S. Code §2679(a)(1) as a defense although they fail to mention that the following paragraph, §2679(a)(2), makes it clear that: "Paragraph (1) does not extend or apply to a civil action against an employee of the Government — (A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." Plaintiff's Complaint clearly alleges Constitutional violations.

Plaintiff is not seeking redress against the Federal Government inasmuch as the Federal Government has supported Plaintiff's Complaint in various ways which constitute, among other things, an effective satisfaction of any Federal administrative remedies contemplated by Defendants. Federal administrative remedies seem adequately exhausted where Federal agencies offer no policy or protocol to which Defendants' actions comport. Whether Defendants distanced themselves from Federal employment or vice versa, the activities of Defendants on the day in question were too remote from Federal control to allow for Federal accountability or remedy.

In 28 U.S.C. § 2671(b), "[t]he term 'Federal agency' includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States [emphasis added]." The difference between an employee and a contractor has long been well established by law. As an

example, the Internal Revenue Service of the Federal Government writes, at FS-2017-09, July 20, 2017: "Worker classification is important because it determines if an employer must withhold income taxes and pay Social Security, Medicare taxes and unemployment tax on wages paid to an <u>employee</u> [emphasis in the original]." Facts used to determine a workers status as an <u>employee</u> include: (i) Behavioral control, such as who directs the work performed; (ii) Financial control, such as method of payment, reimbursement of expenses, and significant investment in equipment used by the worker; and (iii) Relationship, such as permanency, expectation of indefinite continuance, providing insurance, pension, vacation, or sick pay, and written contracts describing the intended relationship "[a]lthough a contract stating the worker is an employee . . . is not sufficient to determine the worker's status." In this case, Defendant offers no evidence, and certainly nothing in writing, to support a claim of employment as a Federal Agent and no allegation of Plaintiff can substitute to satisfy related Federal definitions.

Any reasonable-person standard would not deny relief related to a heinous "personal injury or death" merely because a Defendant fancies or imagines himself to be a Federal employee.

II.      Defendant, Captain Dobrzynski's, Argument II is based on a denial that Defendant acted under color of state law only because he was acting in the capacity of a federal official in this case. As established above, there is no evidence to support this argument that Defendant was a federal employee, and there is evidence to refute this argument. Further, Defendant could only be understood to be acting under color of state law by virtue of his attire and insignia being that of a police officer employed by LFUCG (*see attached* photographs evidencing Defendant attire labeled as Plaintiff's Collective Exhibit A for the purposes of this Response). Even ignoring the

lack of clear assignment to an outside agency, Defendants failed to comport themselves to Federal standards before, during, or after the actions giving rise to Plaintiff's Complaint.

Even if *arguendo*, any Defendant could have been considered by anyone to be working as a Federal Agent, Defendants' rogue behavior throughout would vitiate that view. This is codified by §2679(b)(1) proscribing remedies against employees to those for damages caused "while acting within the scope of his office or employment." In the above-styled case, Defendants acted far afield of anything contemplated by any imaginable special detail or task force of the ATF.

Plaintiff alleges in the above-styled Complaint (¶11) that "Defendant BRAD DOBRZYNSKI, (hereinafter Dobrzynski) was at all times relative hereto an employee of the Lexington Fire Department, assigned to the Fire Investigation Bureau and operating in the capacity as and under the authority given him as an employee of the LFUCG." The FACTS described include that Defendants "assisted agents from" (¶17) the ATF, and that "members of multiple agencies . . . participated collectively" (¶18). At some point, they "divided into teams" (¶19) with Defendants on one of those teams for which "Defendant ROBERTS was the supervisor" (¶20) which is to say not supervised by any Federal agent, leaving the team not under the scope or supervision of any Federal agency. The above-styled Complaint (¶21) reiterates Defendant Drobrzynski's employment status with LFUCG before reporting that Defendant's employer allegedly "asked him to assist ( the Lexington HDU) on the special detail as a medic." The above styled Complaint further establishes Defendant Dobrzynski was acting as an employee of LFUCG (¶22), and details that prior to Dobrzynski assisting the Lexington HDU on the assignment, that not only was he required to obtain permission and authorization from a Captain on the Fire Investigation Bureau, but that the Captain also obtained authorization for

Dobrzynski's participation from "Chief Sweat." This elaborate involvement by a ranking

hierarchy of LFUCG supervisors further establishes that Dobrzynski was acting on behalf of the

LFUCG during the time of the alleged Constitutional violations which are the subject of this

Action.

Allowing that any wrongful death was the "act or omission of any employee of the

[Federal] Government" merely by virtue of LFUCG requesting that their employee assist a

Federal agent or agency, even if a true and proper request, allows LFUCG employees a

sovereign immunity beyond anything contemplated by 28 U.S.C. § 2679. The Federal

government owns 4.25% (1.08 million acres) of land in Kentucky, yet officers are not

automatically considered Federal employees by having ever been asked to help with a task that

might assist any Federal agency. LFUCG employees cannot be excused from liability by virtue

of being expected by their employer, LFUCG, to be of general assistance in matters involving

outside agencies to any degree.

Plaintiff requests {or awaits} an opportunity to Discover the extent to which Defendants

were "acting within the scope of" any employment, Federal or otherwise. This Discovery is

required by 28 U.S. Code §2679(d)(1): "Upon certification by the Attorney General that

the defendant employee was acting within the scope of his office or employment at the time of

the incident," and again by the exact same wording in 28 U.S. Code §2679(d)(2). In 28 U.S.

Code §2679(d)(3), the proper method for petitioning this Court for a finding "that

the employee was acting within the scope of his office or employment" is specified "[i]n the

event that the Attorney General has refused to certify scope of office or employment under this

section." Defendant improperly requests this Court to make a Finding of Fact without the

required Discovery of related facts.

Defendant similarly asserts the Rule 12(b)(1) standard that this Court is "empowered to resolve factual disputes when subject matter jurisdiction is challenged." However, Defendants do not satisfy their burden to provide dispositive facts as required by 28 U.S. Code §2679. Further, Defendants request this Court to make a finding in advance of Discovery related to necessary elements of subject matter in question.

The Plaintiff very respectfully submits to this honorable Court that justice must require Discovery in this matter. In furtherance of its assertion that Defendants were acting as employees of LFUCG and not federal agents on the date in question, Plaintiff intends to enter into the record the testimony of ATF Special Agent Bill Boudhuin. Agent Boudhuin was the head ATF agent in charge of coordinating the task force's plan of action for the date in question (August 11, 2016). During Agent Boudhuin's interview by Kentucky State Police (KSP) Investigators relating to the shooting death of Mark S. Sawaf, he advised that he (Agent Boudhuin) had submitted the plan of action to his supervisor at approximately 10:00 p.m. on August 10, 2016 for approval. Agent Boudhuin further stated during that interview that the LFUCG Defendants WERE NOT included in the plan that his supervisor approved.

Additionally, it is Plaintiff's belief that on occasions where local agencies assist Federal Task Forces, there is customarily a written instrument which sets forth and memorializes exactly what the arrangement between each agency consists of. This document is known as a "Task Force Agreement". Plaintiff submits that discovery should be permitted to see if any such task force agreement can be produced in this case.

In furtherance of Plaintiff's contention that Defendants were acting as employees of LFUCG and not as federal agents on the date in question, Plaintiff reiterates the facts alleged in

paragraphs 128 and 130 of the above-styled Complaint which detail that Defendant Roberts was the supervisor of the team and that notwithstanding and well after the ATF supervisors called off all efforts for the day, Defendant Roberts, on his own authority, led his team (the team referred to as the "Lexington Team") to the location where Defendant Dobrzynski would then shoot Mark S. Sawaf.

**III.** Defendants, LFUCG, Matt Greathouse, individually, and Clayton Roberts, individually, argue that while Plaintiff's Complaint alleges violations, it "alleges no 'facts' on which he can establish liability on the part of Defendants for such violations." This iteration of Defendants' Motions quotes Plaintiff's allegations that a Defendant shot the Deceased who "lay on the ground on his left side in a fetal position, with his hands cuffed in front of him and those cuffs further attached to a belly chain which was secured around his waist." which allegations are not controverted whatsoever. Defendant continues with quotes suggesting the offering of photographs as evidence supporting these allegations {the attached Plaintiff's exhibits are assumed to be those photographs pending any Discovery in this case}.

Saying that Plaintiff's Complaint offers allegations, but "alleges no 'facts'" is tantamount to an accusation of a Federal Rule of Civil Procedure 11(b)(3) violation. Defendants do not raise Rule 11 as a defense, nor are there grounds to do so. Not radically dissimilar to the standards governing denials, Federal Rule of Civil Procedure: 11(b)(3) requires that allegations, such as those in Plaintiff's Complaint, of "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." This is quite different than requiring a Plaintiff to provide evidence in advance of filing a Complaint and, as such, Defendants' Motions are not yet ripe because they lack the very Discovery that Defendants' Motions seek to deny or delay.

**IV.** Defendants, LFUCG, Matt Greathouse, individually, and Clayton Roberts, individually, reference Defendant Dobrzynski having filed a separate Motion to Dismiss with arguments and ask the Court to consider that: "These same arguments apply to these Defendants who adopt by reference the arguments set forth in Dobrzynski's Motion to Dismiss" yet that Motion includes a Conclusion referencing "the Complaints factual allegation." Defendants' Conclusion beginning with the existence of "the Complaints factual allegation" directly contradicts the unsupportable assertion that Plaintiff's Complaint "alleges no 'facts.'"

Moreover, Plaintiff respectfully submits that the Defendants' assertion that Plaintiff does not allege sufficient facts is just plain inaccurate. In his Complaint, Plaintiff lays out with specific particularity the facts which support his claim. Additionally, although Plaintiff does not "stipulate" any of the facts alleged, Plaintiff does submit that the substance of the facts as they are alleged by Plaintiff in his Complaint come directly from the KSP investigation into the shooting death of Mark S. Sawaf and/or the audio recordings of statements given by the Defendants themselves to KSP investigators. Should this Honorable Court allow additional Discovery, Defendants (through deposition) need only or authenticate what they have already stated to KSP investigators OR explain why they might have lied about the facts in their respective audio recorded interviews.

**V.** Defendants embed arguments in footnotes which merit Response:

**1.** ". . . statements made to the KSP investigator by Captain Dobrzynski. Since they are relied upon in the complaint to establish the Plaintiff's case and they are uncontradicted they should be considered as factually accurate."

Statements are recognized as being made, and serve to indicate the existence of facts, but without cross examination or further investigation, their substance constitutes hearsay until Discovery is allowed by this Court.

**2.**     "The federal employee must be 'acting within the scope of his office or employment' to come within the Section 2679(b)(1) exclusive remedy protection.  If the scope of employment requirement is at issue, the employee can request certification from the Attorney General. See 28 U.S.C. § 2679(d).  Certification is unnecessary in this case, however, because Plaintiff's Complaint alleges and does not dispute that Defendants, including Captain Dobrzynski, were acting within the scope of their employment.  If the scope of employment has been pleaded, lack of subject matter jurisdiction is sufficiently 'evident' to grant dismissal without certification.  See Webb v. Smith, 632 F. App'x 957, 960 (10th Cir. 2015)('Mr. Webb also argues that the Attorney General never certified that the defendants were acting in the scope of their employment.  But Mr. Webb pleaded that all defendants were federal employees …. As a result, the absence of subject-matter jurisdiction was evident from the complaint, with or without certification by the Attorney General.')."

If Defendants put "the scope of employment requirement . . . at issue," then they must assume the burden of requesting certification from the Attorney General, and Discovering other evidence, to substantiate their assertions.  Again, allegations of Plaintiff are as yet unsubstantiated by Discovery, and employment "is sufficiently 'evident'" by paychecks which Discovery will likely reveal originating from Defendants' employers such as LFUCG, but not any Federal agency.  Webb is clearly distinguished from this Case where only Defendants plead they were federal employees.

3.    Defendants quote *Bryode v. Gotham Tower, Inc.* 13 F. 3d 994, 996-997 (6th Cir.1994) in a footnote to support the legal principle that: "A Rule 12(b)(6) motion should only be granted if 'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'"  The *Bryode* case prefaces that standard in the immediately preceding sentences of the same paragraph by stating a: "motion under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint.  The basic requirements for a pleading are set out in Rule 8(a) and call for 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  In considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint."  In the above-styled case, a claim is stated with enough detail to allow that the above-styled Plaintiff is entitled to relief for damages related to a wrongful death and the necessarily related loss of filial consortium as the facts claim to describe.  Defendants would require Discovery to attack the facts alleged yet they seek to deny or delay such Discovery.

4.    Defendants footnote *Montejo v. Louisiana*, 556 U.S. 778 (2009) to support their argument that the 6th Amendment cannot apply in this case.  However, *Montejo* involved how *Michigan* v. *Jackson*, 475 U.S. 625 (1986) should be applied when an attorney is appointed without any request whatsoever.  The *Montejo* Court's holding turned on whether "an initial 'invocation' of the right to counsel," not whether a repeated or constant request for counsel, was required to guarantee a citizen's 6th Amendment rights.  Jackson stands for the prohibition against the police initiating interrogation of a criminal defendant after invocation of his right to counsel.  The *Montejo* Court's holding noted differences for "States that require an indigent defendant formally to request counsel before an appointment is made" and went on to recognize the practice of "more than half the States, which appoint counsel without request from the

defendant." The *Montejo* Court's holding allowed the protections of 6th Amendment rights even to the extent of allowing "an opportunity to contend that his letter of apology should have been suppressed under the *Edwards* rule."

Plaintiff's counsel strongly contends and maintains that the 6th Amendment right to counsel applies where some form of questioning related to pending criminal charges would have been anticipated. However, even if it was possible under the circumstances alleged in the complaint that the 6th Amendment right to counsel might not apply, the 5th Amendment right to due process of law was violated and led to subsequent other numerous constitutional violations. As a specific example, Mark S. Sawaf was "deprived of life, . . . without due process of law" after being deprived of his 6th Amendment right "to have the Assistance of Counsel for his defence." On the date in question, he was without any doubt whatsoever in custody and therefore, he had a right to have counsel present during questioning of any kind. Defendants created situations bringing the prisoner in their custody squarely under the protection of the 5th amendment and subsequent right to due process. Plaintiff alleged 5th Amendment due process violations in his initial Complaint.

**5.** Defendants footnote *Burgess v. Fischer*, 735 F. 3d 462, 472 (6th Cir. 2013) and *Whitley v. Albers*,475 U.S. 312, 318-319 (1986) to support an argument that Constitutional protection "in a 42 U.S.C. §1983 action depends on the status of the plaintiff at the time of the incident giving rise to the action." Defendants then claim that Plaintiff "fails to allege any facts to establish Mark Sawaf's status at that time and more importantly, the involvement of Roberts, Greathouse and/or the LFUCG with that status."

**(a)** Contrary to the claim of status not being established, Plaintiff describes in at least seven paragraphs of his Complaint (particularly paragraphs 31, 87, 92, 93, 94,139 and 140) exactly

how at the time of the incidents on the date in question, Mark S. Sawaf was heavily restrained. Plaintiff further describes that Mark S. Sawaf was being "escorted" by Defendants Dobrzynski and Greathouse at the time of the incident (¶75). Defendants were armed with guns. This information included in Plaintiff's Complaint clearly establishes that at the time of the incident, Mark S. Sawaf was not only in custody, but was by any standard in the custody of the above-styled Defendants. Additionally, with leave from this Honorable Court to pursue Discovery, Plaintiff will tender the Court Order issued by the Honorable Federal Judge Magistrate, Hanly Ingram transferring custody of Mark S. Sawaf to the above-styled Defendants for the day of August 11, 2016 (*i.e.*, "the time of the incident giving rise to the action") from the Laurel County Detention Center.

**(b)** Defendants' footnoting of *Burgess v. Fischer*, 735 F. 3d 462, 472 (6th Cir. 2013) to argue that Mark Sawaf's Constitutional protection under the Fourth, Eighth, or Fourteenth Amendments depends upon his "status" fails as Burgess would have this Court "apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Burgess* allows that: "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." All of which is used by *Burgess* as a standard for liability of a municipality, *e.g.*, LFUCG. Facts have been alleged, and Discovery can make clearer, that Defendant Dobrznski "was at all times . . . an employee of the Lexington Fire Department, assigned to the Fire Investigation Bureau, and operating in the

capacity and under the authorization and authority given him as an employee of LFUCG" the

official policies of which, in part, must be seen as "illegal." Facts have been alleged that at least

twice an LFUCG "official . . . ratified illegal actions." Facts have been alleged that indicate both

"improper training and supervision" existed throughout as a matter of "policy." Facts have been

alleged that require a "custom of tolerance or acquiescence of federal rights violations" and that

custom is shown by Defendants to extend to arguments excusing federal rights violations after

the fact.

**(c)**      Defendants' footnoting of *Whitley v. Albers*, 475 U.S. 312, 318-319 (1986) to argue that

excessive force is only barred against convicted persons fails as *Whitley* does not seem to regard

the conviction status of a person in custody when applying the Eighth Amendment. Rather, the

Court in *Whitley* looked at the nature of the actions and held: "It is obduracy and wantonness, not

inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and

Unusual Punishments Clause, whether that conduct occurs in connection with establishing

conditions of confinement, supplying medical needs, or restoring control . . ."

Both "establishing of the conditions of confinement, [and] supplying medical needs" are

at issue in the above-styled case. *Whitley* spells out an example of how deadly force can escape

violation of an Eighth Amendment right where "the order to shoot [is] qualified by an instruction

to shoot low" and this is contrasted with "the infliction of pain in a wanton and unnecessary

fashion." The *Whitley* Court's holding goes on to describe a case where "the officer shot

respondent knowing that it was unnecessary to do so" as violating the Eighth Amendment.

**6.**      Defendants footnote *In re Air Crash of Lexington, Ky*. 556 F. Supp. 2d 665, 674-675

(E.D. Ky. 2008) to support their contention that "there is no such cause of action if the decedent

child is not a minor." However, this Court (E.D. Ky.) clearly held exactly the opposite stating

(near the bottom of 556 F.Supp.2d 674) in unequivocal and incontrovertible terms: "We now hold that the loss of the comfort and companionship of an adult child is a real, direct and personal loss that can be measured in pecuniary terms. Children have an intrinsic value to their parents regardless of who is supporting whom at the time of death. Whether the decedent child is an adult or a minor, society recognizes the destruction of the parents' investment in affection, guidance, security and love." The above-styled Plaintiff is of an age when the support of an adult child might be imperative.

**UNTO** all of the above, the need for Discovery applies. Defendant's Motions avoid Answering the above-style Complaint by Moving the Court to avoid considering any facts or even allowing the Discovery of any facts. This implies that a Kentucky citizen could be shot, execution style, in the head, while trussed in chains and guarded by a team of supposedly trained officers, with their prisoner surronded, acting under the color of law, then left to suffer in obvious pain due to the denial of aid from medically trained personnel at the scene who ignored obvious signs of life while the dying was used as a model for trophy pictures at first secreted from investigators, and yet no liability could possibly be found even without so much as a denial or defense in Answer to a properly filed Complaint. The Defendants' Motions serve only to delay or deny any Discovery useful to justice, equity, and the comfort of survivors whose consciences are shocked by such killing and torture.

If the above-styled Complaint is subject to Dismissal for the mere want of a properly named or identified Federal employee, then Plaintiff most humbly Moves that this Court grant the opportunity for Discovery at least to the extent of locating and naming such Federal employee. This honorable Court is respectfully reminded of 28a USC 21 specifically:

TITLE 28 - APPENDIX of the FEDERAL RULES OF CIVIL PROCEDURE

IV. PARTIES -- Rule 21. Misjoinder and Non-Joinder of Parties

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully implores this Honorable Court to DENY Defendants' collective Motions to Dismiss because Plaintiff has sufficiently set forth in his Complaint all claims asserted. Additionally, Plaintiff respectfully submits that dismissal without further discovery would be unjust and premature at this time.

Respectfully Submitted,


/s/ Douglas E. Asher II
Douglas E. Asher II
ASHER LAW OFFICE
120 South First Street
P.O. Box 1466
Harlan, Kentucky 40831
606-273-8769
asherlaw39@yahoo.com


CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2018, I electronically filed the foregoing with the Clerk of the Court using the CMF/ECF system, which will send a notice of electronic filing to all of the attorneys of record in the case.


/s/ Douglas E. Asher II
Douglas E. Asher II